# In the United States District Court
## for the District of Utah, Central Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JEFFREY SCOTT SMITH,<br><br>Defendant. | MEMORANDUM DECISION<br>AND ORDER<br><br>Case No. 2:04cr596 |

Defendant Jeffrey Scott Smith was indicted for being an addict and unlawful user of controlled substances in possession of firearms, and for possession of marijuana with intent to distribute. Defendant filed a Motion to Suppress Evidence Discovered during an Illegal Search, and a separate Motion to Suppress Custodial Statements. An evidentiary hearing was held, after which the parties filed memoranda, the Court heard oral arguments, and the parties submitted the matter for decision. The motions were taken under advisement.

The Court has reviewed the entire record, and after due consideration defendant's motions are DENIED.

### Factual Background

On March 23, 2004, Detective Michael Lynes ("Lynes"), a Neighborhood Narcotics Detective with the West Valley City Police Department, learned from a concerned citizen that defendant's residence had a high level of short-stay traffic and he/she had seen people exchange money for small packages. After this conversation Lynes searched defendant's trash

and found small baggies containing marijuana and methamphetamine residue.  On April 27, 2004, Lynes searched defendant's trash again and found a poster with a picture of a marijuana leaf on it.  On May 5, 2004, Lynes was contacted by another concerned citizen who also complained about short-stay traffic at defendant's residence and believed that he/she had observed an exchange of money for small packages.

On June 16, 2004, Lynes observed a car leave from the residence and executed a traffic stop on that car driven by Kathleen Nieberger ("Nieberger").  Nieberger was arrested for possessing a quarter-pound of marijuana.  After being given her Miranda rights, Nieberger told Lynes that she had purchased the marijuana from defendant and that she has purchased marijuana from defendant over the past year and a half.  Nieberger told Lynes that her husband, Edmond Niegberger had known the defendant for over ten years and that in the past she or her husband would buy two to three pounds of marijuana at a time from defendant.  Nieberger said defendant had given her the quarter-pound of marijuana which was taken out of a duffle bag in his room which contained five to six pounds of marijuana.

After this arrest of Nieberger on June 16, 2004, Lynes prepared a search warrant for search of defendant's residence, and an affidavit based upon prevention of physical harm to any person if notice were given, as well as prevention of property from being quickly destroyed. The warrant was a "no knock" warrant which was reviewed by a Deputy Salt Lake District Attorney, and approved by the Deputy District Attorney for presentment to a magistrate.  The magistrate authorized the "no knock" warrant.

In Lynes' Affidavit in Support of Search Warrant, he states the following reasons

for issuance of the "no knock" warrant:

> The package located in the trash that held the suspected methamphetamine is
> such in nature that it could be easily destroyed or disposed of.  Smith has a
> criminal history which includes possession of a controlled [substance] with
> the intent to distribute, and drug paraphernalia.  Your affiant believes that
> narcotics possession and distribution from a private residence will increase
> the likelihood that the suspect will attempt to destroy, dispose of, or secret
> evidence if the service of the warrant is delayed.
>
> Your affiant has received training indicating that a person under the influence
> of narcotics may act irrationally and violently.  Further your affiant believes
> that if announcement were required it would provide sufficient time for
> subjects to obtain a weapon and thwart service of the warrant or to do harm
> to serving officers.

Lynes Aff. pg. 7.

On June 17, 2004, Lynes and other police officers executed the search warrant at

defendant's residence at 12:30 a.m.  The police breached the door without announcing their

presence and knocking.  Only after officers were in the house did they announce, "Police. Search

Warrant."  Officers searched the house and recovered from defendant's closet a backpack

containing approximately four pounds of marijuana.  A Beretta handgun and ammunition were in

the closet as well.  Officers also found a Glenfield rifle in another room of the house.

## Arguments

Defendant argues that because the search warrant was invalid, the search of his

residence was unreasonable under the Fourth Amendment.  In this regard defendant claims that

the search warrant was insufficient to justify a no-knock warrant because it was  "generic, over-

broad, and boilerplate information."  Defendant submits that Lynes failed to articulate how the

property could be quickly destroyed.  Defendant argues that even though some of the baggies

tested positive for methamphetamine residue, Lynes failed to articulate why this evidence would be different than any other drug case. Defendant also argues that even though officers had the belief that defendant possessed in his residence at least five to six pounds of marijuana they failed to articulate how this large amount of marijuana could have been destroyed even if notice were given before entry. Moreover, the only evidence of methamphetamine was from the trash that was searched three months previous to the warrant, and there was no other evidence that defendant used or dealt methamphetamine.

Defendant argues that broad assertions in the affidavit that evidence will be destroyed without more articulation does not justify the no-knock warrant. Defendant also argues that Lynes' generic, broad assertion that "physical harm may result to any person if notice were given," also does not justify a no-knock warrant. The generic statement that people under the influence of drugs tend to act irrationally and violently is not reasonable to justify a no-knock warrant.

Concerning the gun charge, defendant points out that there was *no* evidence or claim in the affidavit that defendant possessed a weapon, that he told others he had a weapon, or that he made threats directed toward police when previously arrested.

The government argues that the no-knock search was reasonable under the Fourth Amendment because officers had reasonable suspicion that if notice was given the marijuana and/or methamphetamine would be destroyed and officers' safety would be in jeopardy. The government states that Lynes' affidavit provided reasonable suspicion of exigent circumstances.

The government also argues that even if the no-knock search were to be found

invalid under Fourth Amendment analysis, the *Leon* good-faith exception will prevent the

evidence from the search from being excluded.  In this regard the government submits that under

*United States v. Leon*, 468 U.S. 897 (1984), evidence from an illegal search is admissible if it

was obtained by police officers who acted in good-faith and with reasonable reliance on a facially

valid search warrant.  The government states that the warrant in this case was executed in strict

accordance with the law as well as the warrant itself, and therefore the evidence obtained in the

house should not be excluded.

I.       DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DISCOVERED DURING AN
         ILLEGAL SEARCH.

         A.       Probable Invalidity of the No-Knock Search under the Fourth Amendment
                  due to Lack of Exigent Circumstances.

                  In *United States v. Danhauer*, 229 F.3d 1002, 1005 (10th Cir. 2000), the Tenth

Circuit stated:

>            In reviewing suppression motions, courts have the discretion to proceed
>            directly to an analysis of the good-faith exception without first addressing
>            the underlying Fourth Amendment question. . . . When resolution of a
>            Fourth Amendment issue is 'necessary to guide future action by law
>            enforcement officers and magistrates,' however, it is appropriate for a
>            reviewing court to address this issue first.

*Id.*  (*citing Leon*, 468 U.S. at 924-25).

                  In the case at bar, the Fourth Amendment issue regarding no-knock search should

be addressed before consideration of the good-faith exception as set forth in *Leon*.

                  The Supreme Court has held that the "Fourth Amendment incorporates the

common law requirement that police officers entering a dwelling must knock on the door and

announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*,

520 U.S. 385, 387 (1997).  However, the Supreme Court "recognized that the 'flexible requirement of reasonableness should not be read to mandate a rigid rule of announcement that ignores countervailing law enforcement interest.'" *Id.* (*citing Wilson v. Arkansas*, 514 U.S. 927, 934 (1995)).  The knock and announce requirement may give way when (1) circumstances present "a threat of physical violence", or (2) where police believe "that evidence would likely be destroyed if advance notice were given."  *Id.*  (*citing Wilson*, 514 U.S. at 936).

The "reviewing court must 'determine whether the facts and circumstances of the *particular* entry justified dispensing with the knock and announce requirement.'" *United States v. Musa*, 401 F.3d 1208, 1213 (10th Cir. 2005) (*citing Richards,* 520 U.S. at 394).  "'This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged.'" *Id*. (*quoting Richards,* 520 U.S. at 394-95).

The Tenth Circuit in *United States v. Moland* confronted a similar issue as the case in front of this Court, where the no-knock warrant was issued to state officers during a state investigation and then charges were later brought in federal court.  The Tenth Circuit stated in *United States v. Moland* that "'specific facts regarding the premises to be searched' are required to show exigent circumstances justifying a no knock warrant under [18 U.S.C.] §3109."  996 F.2d 259, 260 (10th Cir. 1993) (quoting *United States v. Stewart*, 867 F.2d 581, 585 (10th Cir. 1989)).  The *Moland* court also stated that, "evidence seized by state officers will be suppressed in federal prosecution if the search violated the Fourth Amendment."  *Id*.  However, in *Moland* the Tenth Circuit did not determine if the warrant was "constitutionally unreasonable" due to lack of exigent circumstances because "the good faith exception to the exclusionary rule applies."

*Id.* at 261.

The *Musa* court in discussing the sufficiency of exigent circumstances stated that "information that defendant was dealing methamphetamine, combined with [the police officer's] knowledge that firearms are tools of the drug trade, would not alone be sufficient to support an exception." *Musa,* 401 F.3d at 1213.  The court continued to state that "a suspects significant criminal history of violence may provide the necessary additional specific information justifying a no-knock entry." *Id.*

In the case at bar, it appears that there were not sufficient exigent circumstances of danger to the officers or destruction of the evidence to allow a no-knock warrant to stand under the Fourth Amendment.  Despite Lynes' statements regarding the possible ease of disposing of evidence and that suspects of drug distribution may act violently, under the above Tenth Circuit precedents the reasons stated in the search warrant affidavit likely would not pass muster to show sufficient exigent circumstances to justify a no-knock warrant.  In this case, the defendant had one previous conviction for distribution of marijuana and possession of drug paraphernalia. However, it did not involve violence or guns.

Evidence of methamphetamine was found in defendant's trash three months prior to the search, but there was no other evidence that defendant had anything to do with methamphetamine use or distribution.  Concerning the marijuana, the five to six pounds which police had reason to believe existed in the house could not have been readily disposed. Considering the Supreme Court holding in *United States v. Banks*, 540 U.S. 31 (2003), officers only have to wait 15 to 20 seconds after knocking with no answer before they can enter.  Under

this holding, the defendant would not have been able to dispose of five to six pounds of

marijuana in just a few seconds.

Under the facts of this case, this Court assumes without deciding that the no-

knock warrant was unreasonable and unjustified under the Fourth Amendment because the

warrant did not present sufficient exigent circumstances to justify the no-knock entry into

defendant's residence.

B.    Evidence Obtained by Execution of an Invalid Search Warrant
Nevertheless may be Admitted under the *Leon* Good-Faith Exception.

In *United States v. Leon*, 468 U.S. 897 (1984) the Supreme Court held that "the

Fourth Amendment exclusionary rule should not be applied so as to bar the use in the

prosecutor's case in chief of evidence obtained by officers acting in reasonable reliance on a

search warrant issued by a detached and neutral magistrate but ultimately found to be invalid."

In the *Leon* opinion the Supreme Court set out a situation where an invalid warrant does *not*

come under the good faith exception:

> (1) if the judge issuing the warrant 'was mislead by information in the
> affidavit that the affiant knew was false or would have known was false
> except for his reckless disregard for the truth,' (2) where the issuing judge
> 'wholly abandoned his judicial role,' (3) where the underlying affidavit was
> 'so lacking in indicia of probable cause as to render official belief in its
> existence entirely unreasonable,' and (4) where the warrant was 'so facially
> deficient – i.e., in failing to particularize the place to be searched or the things
> to be seized – that the executing officers cannot reasonably presume it to be
> valid.'

*Leon,* 468 U.S. at 923 (*See also United States v. Martinez-Martinez*, 25 Fed.Appx.733, 736 (10th

Cir. 2001).

*Leon* "does not apply to the improper execution of a warrant . . . *Leon* does apply,

-8-

however, where the execution was in accordance with the terms of the warrant." *Moland*, 996

F.2d at 261 (*citing Untied States v. Medlin*, 798 F.2d 407, 410 (10th Cir. 1986), and *United*

*States v. Moore*, 956 F.2d 843, 851 (8th Cir. 1992)). *"The exclusionary rule is designed to deter*

police misconduct rather than to punish the errors of judges and magistrates. . . there exists no

evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth

Amendment or that lawlessness among these actors requires application of the extreme sanction

of exclusion." *Leon*, 468 U.S. at 916.

      "The test to determine whether the court should apply the 'good faith' exception

'is confined to the objectively ascertainable question whether a reasonably well trained officer

would have known that the search was illegal despite the magistrate's authorization.'" *United*

*States v. Beck*, 2005 WL 1649310 (10th Cir. (Utah)) (unpublished), (*citing Leon*, 468 U.S. at 922

n.23).

      In the case at bar, even though it is assumed that the warrant is invalid and

unreasonable under Fourth Amendment analysis, the evidence should be admitted under the *Leon*

good-faith exception.  In this case Lynes drafted the warrant and affidavit, but it was specifically

approved by the Deputy Salt Lake District Attorney and Deputy District Attorney before it was

presented to the magistrate.  This Court holds that officer Lynes in good faith believed that the

search warrant was valid and legal.  He did not knowingly supply false information to the

magistrate.  Under these circumstances, a reasonably well trained officer would not have known

that the facially sufficient and valid search warrant was in fact invalid.  Neither would a

reasonably well trained officer have known that the search was illegal notwithstanding

authorization by a presumably neutral and detached magistrate.  Manifestly, the magistrate who approved the warrant was not mislead by the information in the affidavit because it does not appear from the face of the affidavit that the officer gave false information.  Nothing has been presented to show that the magistrate "rubber stamped" the search warrant, or from the facts presented to this Court that he abandoned his judicial role.

This Court rules that the underlying affidavit provided probable cause that a search warrant should be issued.  The lack of showing sufficient exigent circumstances to support the need for a no-knock warrant did not jump out as a defect to render the warrant invalid.  The warrant was not facially deficient, such as failure to particularize the place to be searched and the things that were to be seized.

On the facts represented to this Court, the officers followed the instructions in the warrant and acted in accordance to what they thought was a valid warrant at the time of the search.  The officers acted as reasonably well trained officers.  Accordingly, this Court determines that they were acting in good faith and that they did not know nor should they have known that the warrant was invalid.  There was no officer or magistrate misconduct.

In short, there is nothing presented to this Court that shows the existence of any of the factors which would show the existence of an invalid warrant as listed in *Leon* and set forth above.  Accordingly, this Court rules that the evidence obtained in the residence as a result of the search in question should not be suppressed under the *Leon* good-faith exception.

II.     DEFENDANT'S MOTION TO SUPPRESS CUSTODIAL STATEMENTS

        The Supreme Court has stated that "the purpose of the Miranda warning is to

assure that the defendant 'is accorded his privilege under the Fifth Amendment to the

Constitution not to be compelled to incriminate himself.'" *United States v. Giluardo-Parra*, 2004

WL 724499 (D. Utah) (*citing Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).  In *Miranda*, the

Supreme Court held that:

> The prosecution may not use statements, whether exculpatory or
> inculpatory, stemming from custodial interrogation of the defendant unless
> it demonstrates the use of procedural safeguards effective to secure the
> privilege against self-incrimination.

*Miranda*, 384 U.S. at 444.

        "Two requirements must be met before *Miranda* is applicable: the suspect must

be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" *United

States v. Wiseman*, 158 F.Supp.2d 1242, 1251 (D. Kan. 2001) (*quoting United States v. Ritchie*,

35 F.3d 1477, 1485 (10th Cir. 1994)).  Even when a Miranda warning may be defective, the

statements may be admissible if they were voluntarily made.  *See United States v. Lopez,* 2005

WL 292992 (D. Utah).  "The voluntariness of a confession is determined by considering the

totality of the circumstances in which it was made."  *United States v. Perdue*, 8 F.3d 1455, 1466

(10th Cir. 1993) (*quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)).

        In the case at bar, at the evidentiary hearing Lynes testified regarding the custodial

statements made by defendant.  Lynes testified that once the no-knock warrant had been executed

he first spoke to Kristen Smith who was in the residence.  Lynes stated that before he talked to

-11-

Kristen he had gone to his car to get his Miranda card.  He read the Miranda warning written out

on the card to Kristen before questioning her.  About ten minutes after speaking with Kristen,

Lynes and the defendant went into the bedroom area in order to continue the search.  Lynes

formally introduced himself to defendant, and read the Miranda warning as set forth on the card.

Lynes testified that defendant said that he understood the Miranda warning and that he waived

his rights.  Defendant then proceeded to answer the questions posed by Lynes.

From Lynes' testimony at the prior evidentiary hearing it is clear that defendant

was advised of his Miranda rights before answering questions.  Lynes' testimony that he read the

Miranda warning from a card clearly shows that the warning as given was not defective.  Nothing

was presented to rebut Lynes' testimony regarding defendant's willingness to talk with him and

defendant's waiver of his Miranda rights.  Lynes testified that defendant was not nervous when

being questioned and that he answered in a laughing manner.  From the evidence presented to the

Court, the Court finds that defendant was read his Miranda rights, and that he voluntarily waived

those rights before he was questioned by Lynes.  In all events under the totality of circumstances,

the Court finds that the statements by defendant were voluntarily made.

Based on the foregoing, this Court rules that the custodial statements obtained

from the defendant were not obtained illegally, and shall not be suppressed.  Accordingly it is

hereby

ORDERED, that Defendant's Motion to Suppress Evidence Discovered from an

Illegal Search is hereby DENIED; it is

FURTHER ORDERED, that Defendant's Motion to Suppress Custodial Statements is hereby DENIED.

IT IS SO ORDERED.

DATED this 2nd day of August, 2005.

_____

J. THOMAS GREENE
UNITED STATES DISTRICT JUDGE